## MARK ASHLEY v. THE STATE.

### No. 328.   Decided March 9, 1910.

**1.—Murder—Charge of Court—Aggravated Assault.**

Where, upon trial for murder, there was evidence that the defendant struck the deceased with a crowbar, only for the purpose of relieving himself and his brother from the infliction of injury by the deceased, although they may have brought on the difficulty, and that there was no intent on the part of the defendant to kill the deceased, the court should have charged upon the law of aggravated assault; and this, although the court charged the jury that if the defendant struck the deceased with a crowbar, but they had a reasonable doubt that the defendant intended to kill him, to acquit the defendant. Ramsey, Judge, dissenting.

**2.—Same—Evidence—Deadly Weapon—Opinion of Witness—Expert.**

Upon trial for murder there was no error in admitting testimony by the State's witness that he had weighed and measured the crowbar, with which defendant struck the deceased, and that the same was a deadly weapon used in the hands of the defendant, it having been shown that said crowbar was about fifty inches long and weighed about eleven pounds. This was not the subject of expert testimony. Any witness could testify to this fact; besides the witness was not permitted to testify anything with reference to the wounds or how they were inflicted.

Appeal from the District Court of Jones.   Tried below before the Hon. Cullen C. Higgins.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. F. Cunningham* and *Thomas & Chapman,* for appellant.—On question of admitting evidence that the crowbar was a deadly weapon: Waite v. State, 13 Texas Crim. App., 169; Dixon v. State, 51 Texas Crim. Rep., 555, 103 S. W. Rep., 399; Smith v. State, 99 S. W. Rep., 100; Rice v. State, 49 Texas Crim. Rep., 569, 94 S. W. Rep., 1024; Ripley v. State, 51 Texas Crim. Rep., 126, 100 S. W. Rep., 943; Hunt v. State, 9 Texas Crim. App., 166.

On court's failure to charge on aggravated assault:   Johnson v. State, 42 Texas Crim. Rep., 377, 60 S. W. Rep., 48; Fitch v. State, 37 Texas Crim. Rep., 500, 36 S. W. Rep., 584; Terrell v. State, 53 Texas Crim. Rep., 604, 111 S. W. Rep., 152; McDowell v. State, 55 Texas Crim. Rep., 596, 117 S. W. Rep., 831; Grant v. State, 56 Texas Crim. Rep., 411, 120 S. W. Rep., 481; Ware v. State, 49 Texas Crim. Rep., 413, 92 S. W. Rep., 1093; Tillery v. State, 24 Texas Crim. App., 251, 5 S. W. Rep., 842; Gardner v. State, 40 Texas Crim. Rep., 19.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, and given five years in the penitentiary.

1.   The court charged the jury as follows:   "If you find from the evidence in this case that the defendant, Mark Ashley, struck the

deceased, B. O. Hargrove, with a crowbar and thereby inflicted wounds from which the deceased died, but further believe or have a reasonable doubt thereof that the defendant in so striking the deceased did not, at the time of so striking him, intend to kill the said B. O. Hargrove, you will acquit the defendant."

Appellant, to meet this phase of the case, requested the following instruction: "If you find from the evidence that the defendant, Mark Ashley, made an assault upon the deceased, B. O. Hargrove, with a crowbar, but if you further believe that the defendant in making said assault did not intend to kill the said B. O. Hargrove, then you are charged that the defendant would not be guilty of murder in the first degree or murder in the second degree or manslaughter, and if you find from the evidence that said assault was made without any intent on the part of the defendant to kill the deceased Hargrove, then you will acquit him of murder in the first degree and murder in the second degree and of manslaughter, and will then inquire as to whether or not in making said assault he did so in the defense of himself or in the defense of his brother, Emmett Ashley, and if you should find from the evidence that said assault was made either in the defense of himself or in the defense of his brother, then you will acquit him altogether, and say by your verdict not guilty, but should you find from the evidence that said assault was made with no intention on the part of the defendant to kill the deceased, Hargrove, and should further find, beyond a reasonable doubt, that the defendant in making said assault did not do so in the defense of himself or in the defense of his brother, Emmett Ashley, then and in that event the defendant would be guilty of aggravated assault, and you should find him guilty of aggravated assault and assess his punishment at a fine of not less than $25 nor more than $1000, or by imprisonment in the county jail, not less than one month nor more than two years, or by both such fine and imprisonment."

The question is properly presented for revision, the refusal to give the special charge being excepted to in motion for new trial and in bill of exceptions. The facts show that Hargrove, the deceased, and the father of appellant were partners in a well boring outfit; that appellant's father was engaged personally in other business matters, and sent appellant with Hargrove to help attend to and work the well boring machinery. Hargrove was a man 48 or 50 years of age. Appellant was a boy about 15 years of age at the time of the difficulty. Hargrove had been somewhat overbearing to appellant, had cursed him on several occasions, and on one occasion had struck him several licks with a stalk of maize or sorghum cane, or something of the sort. This occurred about a month before the difficulty in question. On the morning of the day of the difficulty deceased had used harsh language to appellant, had cursed him, and appellant had made up his mind that he would not work with him any longer, and during the noon hour had gone to the residence of his father in the town of Anson, and in-

formed his brother Emmett of the condition of things. Emmett told him he should go back to work, but this appellant declined to do. Finally, Emmett told him he would go out with him to where the well boring machinery was located, and at which point they were beginning to bore a well and learn how to handle the machinery, and he, Emmett, would take appellant's place after getting initiated into the management and handling of the machinery, and that appellant could go home. They drove out in a surrey, and as they drove up deceased came to where they were in the surrey and was rather rough in his language, and among other things waved a knife over the legs and in front of appellant, who immediately jumped out of the surrey and fled; that deceased followed him, and Emmett then jumped out of the surrey and followed deceased; that deceased had a knife when he was following appellant, and that Emmett got out his knife and followed deceased. Deceased chased appellant around the wagon until appellant found the crowbar, which he picked up and struck at or struck deceased perhaps twice, and about that time Emmett grabbed deceased and cut him with a knife, and while they were fighting, deceased trying to cut Emmett with his knife, appellant struck one more blow with the crowbar which knocked down the deceased. Thereupon appellant asked deceased if he could get him some water, and being informed by deceased there was no water in the barrel on the wagon, and deceased having a son with him, they said they would go, and they left, went to town, and were soon arrested. Appellant stated that he did not intend to kill deceased; that he was only using the crowbar, it being the first thing he could find with which to defend himself, and the last lick he struck in defense of his brother; that he had no idea of killing, but only to force deceased to stop or cease his attack. This is the defensive side of the case. The State's side of the case presents it differently, and suggests testimony that shows that appellant was in the wrong in bringing on the difficulty. These issues were made by the testimony, and in conflict with each other. In this condition of the record it became necessary for the court to charge the law applicable to the different phases of the testimony. We have deemed it unnecessary to go into anything like a full statement of the matter, and only make the above to show there were conflicting theories about the trouble and as to how it originated. One other fact may be stated, that is as to the disparity of the size and strength of the parties. Deceased was a man something like six feet in height, and weighed from 180 to 200 pounds, and was a blacksmith and physically a very strong man. Appellant was a boy about 15 years of age, and weighed about 110 to 125 pounds. There seems to be no question of the fact that deceased had the knife, for it was found on the ground where the difficulty occurred. The court recognized the force of appellant's testimony in regard to his want of purpose and intent to kill, and in doing so instructed the jury that if appellant had no intention to kill at the time he struck they would acquit. Self-defense aside, the jury would

not be authorized to acquit, and if self-defense was in the case and he acted from that standpoint purely, then it would make no difference whether he intended to kill or not; he would be justified even if he killed on purpose. But if appellant struck with the crowbar only for the purpose of relieving himself from the infliction of injury or to relieve his brother, conceding they may have been in the wrong in bringing on the difficulty, and the jury should find that the killing did not amount to murder or manslaughter, then the issue of aggravated assault under the facts was in the case, and if appellant struck under those circumstances, the jury might be justified in finding him guilty of aggravated assault. This was an issue in the case, and this was evidently taken from the jury by the charge given in regard to acquitting if appellant did not intend to kill. An intent to kill is not an ingredient, necessarily so at least, of aggravated assault. We are not discussing any phase of the law where aggravated assault would arise in case the killing occurred under adequate cause and sudden passion, or in other words, manslaughter, and failing in the killing the charge would be aggravated assault. The question here is as to whether or not appellant was entitled to a charge on aggravated assault under the facts of the case where the jury might find that self-defense might not give appellant the benefit of that issue. The charge as given eliminated any question of aggravated assault, and it was, therefore, error under the facts. If the jury should find that appellant acted in self-defense, they would acquit whether he intended to kill or not, but if he intended simply to relieve himself of the infliction of injury at the hands of deceased and did not intend to kill him, but only used such force as he deemed necessary to relieve himself of the assault, without the ulterior purpose to kill, then he would have been guilty of aggravated assault, and the jury should have been so instructed. Because this was not done the judgment will be reversed.

2. Another question is presented upon which we are asked to reverse the judgment. The witness Sprayberry was permitted to testify that he had weighed and measured the crowbar which had been previously identified as that used by appellant in striking deceased, and which was claimed by the State to be the cause of the death of deceased; and witness was further permitted to testify after stating the weight and length and size of the crowbar, that said crowbar was a deadly weapon used in the hands of defendant, a boy 15 years of age. Various objections were urged to the admission of this evidence on the ground that the witness had not qualified himself as an expert so as to testify to the deadly character of the instrument, and upon cross-examination the bill shows that the witness testified he was a deputy sheriff of the county, and had been a farmer practically all his life; that he was not a physician or surgeon, had never studied medicine or surgery, and knew nothing of the anatomy of a man; never saw the wounds on the head of deceased or assisted in dressing them; knew nothing of their size and character; had never seen or dressed

a wound made by a crowbar used as a bludgeon in a fight; had never used one himself, and knew nothing personally from observation or otherwise as to the effect of such weapons when used in a fight, whereupon appellant renewed his objection to said evidence that said witness was not shown to be an expert, and on the contrary was shown not to have sufficient knowledge to enable him to testify as an expert on the question of whether or not said crowbar was a deadly weapon, and asked the court to withdraw said testimony, and exclude the same from the consideration by the jury. The crowbar was shown to be an instrument about fifty inches long, and weighed about eleven pounds. We are of opinion that there is no error in the admission of this testimony. It was not the subject of expert testimony; that is, the fact that the weapon could be used as a deadly weapon in striking on the head of a person. Any witness, it occurs to us, could testify as to the fact that that amount of iron could be a deadly weapon. It will be noticed that the witness was not permitted nor did he testify anything in regard to the wounds or that they were inflicted by the crowbar; in fact, he was ignorant as to all the details of the difficulty. The witness only described the length and the dimensions and weight of the instrument to the jury, and on those facts stated the weapon was a deadly weapon. He was not permitted nor asked to detail the manner of its use. As the bill presents the matter we are of opinion that this testimony was not erroneous. In fact, it was, even if erroneous, not of a reversible nature. Any witness of common observation would have known as a matter of knowledge that an instrument such as described might be a deadly weapon when used as a bludgeon.

3. Another bill of exceptions was reserved to the manner of drawing the special venire. This will not occur upon another trial, and we are led to believe appellant did not believe there was any merit in it, as it is not presented in his brief for revision.

Because of the error in the charge as given and the refusal to give the special requested instruction above discussed, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

RAMSEY, JUDGE (*dissenting*).—There are authorities sustaining the opinion, but the rule seems to me to be illogical. Here the court instructs the jury that if appellant did not intend to kill deceased when he struck him to acquit. This court says that if appellant did not intend to kill (self-defense of course not being in the case) then he would be guilty of aggravated assault. This I concede would have been the proper charge to have given. But because the charge is more favorable to appellant than it should have been, is not, in my opinion, ground for reversal. To so hold in effect introduces this rule: If you give the appellant in a charge less than he is entitled to, the State's condition is woe; if you give him more than he should receive it is ruin. In this case the jury did not even find appellant guilty

of manslaughter. To say that this charge injured appellant is to say that the jury were dishonest or so lacking in intelligence as to be unfit to sit on any jury.